POLLIE T. CARLETON ET AL. v. J. HAUSLER ET AL.

Decided January 18, 1899.

1. **Power Coupled with Interest—Survival.**

An agreement between joint owners of land incumbered by liens to secure their notes given for purchase money, that either shall have power to sell, and if either die before their payment, title shall be vested in the survivor in fee simple, in trust to sell for the discharge of such notes, is not a mere power, terminating on the death of oue of the makers, but passes the entire interest in trust to the survivor.

2. **Will—Independent Executor—Power to Sell Lands.**

A will appointing an independent executor with power to "take charge of the estate and manage it to the best advantage for the benefit of my creditors," confers implied power on the executor to convey lands of the estate in discharge of liens against them and without order of the court.

3. **Lienholder in Possession—Trespass to Try Title.**

Grantees of a joint owner of land who has discharged vendor's liens against the same and is in sole possession, can not be dispossessed at suit of their cotenants without tender of the amount due them for discharging the liens.

APPEAL from McLennan. Tried below before Hon. MARSHALL SURRATT.

*Eugene Williams, Chas. A. Jennings,* and *Walton & Hill,* for appellants.

*J. L. Peeler,* for appellees.

FISHER, CHIEF JUSTICE.—This is an action by the appellants in trespass to try title, to recover an undivided one-half interest in a certain tract of land described in plaintiff's petition. The defendants pleaded not guilty. Upon trial of the case before the court below judgment was rendered in favor of the appellees. The facts are as follows:

"1.    That on the 17th day of May, 1856, W. B. P. Gaines and Robert J. Townes purchased the land in controversy under deed of conveyance from one John B. Jones, shown in paragraph 12 of these facts; that said deed is a common source of title to said land, and that said property was acquired during the married life of Robert J. Townes and his wife, Pattie E. Townes.

"2.    That Pattie E. Rector, Pollie T. Carleton, Mila T. Morris, N. Cobb Townes, and Allen R. Townes are the children and only children and heirs at law of Robert J. Townes and Pattie E. Townes, his wife.

"3.    That all rights now held and claimed by plaintiffs and defendants are claimed by the plaintiffs by descent from Robert J. Townes and by conveyance from his heirs; and by the defendants by conveyance from W. B. P. Gaines and Robert J. Townes, and Chas. S. West, executor, and one or more of them, and subsequent deeds.

"4.    That Pattie E. Townes and Robert J. Townes were married January 8, 1846, and that Pattie E. Townes died in August, 1863, and that Robert J. Townes died in October, 1865.

"5.    That Robert J. Townes died testate, and that Chas. S. West of Austin, Texas, was the executor, with powers vested in him as shown by will set out in paragraph 17 of these facts.

"6.    That plaintiffs have never paid any taxes on the land in controversy.

"7.    That when the estate of Robert J. Townes, deceased, was closed, it was found insolvent.

"8.    That if the agreement between R. J. Townes and W. B. P. Gaines, shown in paragraph 15 of these facts, and the deed of the latter to his son W. P. Gaines, shown in paragraph 21 of these facts, or if the deed shown in paragraph 20 of these facts from Chas. S. West as executor of R. J. Townes, together with the will of said Townes, to W. B. P. Gaines, in connection with said deed from W. B. P. Gaines to his son W. P. Gaines, under all the circumstances and legitimate facts appertaining thereto, passed title to the said W. P. Gaines, the son, then plaintiffs can not recover in this suit. Otherwise they can recover the two-fifths interest represented by Mrs. Pollie T. Carleton and Mrs. Pattie E. Rector in the land sued for, as described in plaintiffs' original petition. It is further agreed that each of the defendants deraign title to the land in controversy from the said W. P. Gaines.

"9. That no recovery can be had for the interests in the property in controversy inherited by Mrs. Mila T. Morris, N. Cobb Townes, and Allen R. Townes, by reason of the bar of the statute of limitation.

"10. That there is no limitation against Mrs. Pollie T. Carleton and Mrs. Pattie E. Rector, heirs of Robert J. Townes, deceased, in the land sued for as described in plaintiffs' original petition.

"11. W. B. P. Gaines died in 1891.

"12. Deed dated Brazoria, 17th May, 1856, from John B. Jones to Wm. B. P. Gaines and Robert J. Townes, conveying to them a number of tracts of land, including the land in controversy. This deed was duly acknowledged on the 19th of May, 1856, and recorded on the 28th October, 1857, in the records of deeds of McLennan County, Texas, in Book 'G,' on pages 590 and 591.

"13. It is agreed by and between the parties hereto that Pattie E. Rector (nee Townes), joined by her husband and E. L. Rector, has duly conveyed by deed in writing her one-fifth interest in the land in controversy to the plaintiff Pollie T. Carleton before the filing of this action.

"14. W. P. Gaines, being sworn, testified: W. B. P. Gaines was my father. He died in 1891. I am 46 years old. In the years 1855 and 1856, W. B. P. Gaines and Robert J. Townes were partners in buying and selling land in Texas. I know the handwriting of W. B. P. Gaines and Robert J. Townes. The agreement shown in paragraph 15 of these facts was signed by W. B. P. Gaines and Robert J. Townes. Robert J. Townes wrote said agreement. The notes shown in paragraph 16 of these facts were signed by W. B. P. Gaines and Robert J. Townes. What I know about the payment is what my father told me and from papers in my possession. Robert J. Townes died in the fall of 1865. In the year 1867 or 1868, I helped gather cattle belonging to my father for the purpose of selling them and paying off said notes; though I did not actually see the money paid over, I was informed of such purpose by my father. Said notes and certain other notes, and the claim of John Barnes against the estate of Robert J. Townes, shown in paragraph 18 of these facts, were found together in an envelope among the private papers of my father W. B. P. Gaines. There were no other notes ever found among the papers of Gaines and Townes or among the papers of W. B. P. Gaines that resembled or are in any way similar to the notes shown in paragraph 16 of these facts. The receipt signed by Jones, shown in paragraph 19 of these facts, was found among the private papers of W. B. P. Gaines. There was no money paid on the claim of Barnes against the estate of Robert J. Townes, which was transferred to W. B. P. Gaines, as shown in paragraph 18 of these facts. The only thing that W. B. P. Gaines received from said estate was the lands conveyed to him by Chas. S. West, as executor. Said lands were worth, in 1872, on an average of 50 to 75 cents an acre. The particular land in controversy was worth $2.50 or $3 per acre at that time. Immediately after the death of Robert J. Townes, my father W. B. P. Gaines began to pay taxes thereon. Robert J. Townes was insolvent when he died. W. B. P. Gaines was never insolvent. The

Chas. S. West referred to as executor of Robert J. Townes was a prominent lawyer at Austin, Texas, and at one time a judge of the Supreme Court of this State.

"The testimony of the witness Gaines, so far as he stated what his father told him and what he knew from the papers in his possession as to the payment of the Lanphere notes, and their being paid after Townes' death, and what his father told him as to the purpose of selling the cattle, was objected to by the plaintiffs as being hearsay. The court admitted the testimony, construing it as hearsay, and to this extent objectionable.

"15. Agreement between Wm. B. P. Gaines and Robert J. Townes as follows: State of Texas, County of Travis.—Whereas, Wm. B. P. Gaines and Robert J. Townes are the joint and equal owners of several tracts of land. [Here follows the description of a number of tracts, including the land in controversy in this suit, being the same land purchased from John B. Jones, and then the instrument proceeds as follows:] And whereas, they have executed in favor of Ambrose Lanfear several promissory notes for the purchase of said tracts of land; and whereas, they are desirous for providing for the sale of said lands and for the payment of said notes: Now it is agreed that the parties are equally bound for the payment of said notes; that each party shall have authority to sell said lands or any part thereof, upon such terms as he may consider best; that after the payment of all expenses and charges connected with said lands, the proceeds of the sale shall be applied to the payment of said notes; that each party shall have reasonable compensation for trouble, labor, and expense in attending to said lands; that after payment of said notes the lands shall be equally divided between them; and that if either party shall die before all of said notes are paid, then the legal title of such party, his heirs, etc., shall be thereby divested in said lands, and the same shall be vested in the survivor, his heirs, etc., in fee simple and to be held by said survivor, his heirs, etc., in trust to sell and dispose of the same or any part thereof, to pay said notes and all costs attending said trust. In witness whereof said parties have hereunto set their hands and scrolls for seals, this 27th of August, 1856. (Signed) W. B. P. Gaines, R. J. Townes. Witnesses: Peter McGreal, Geo. W. White.' [Seal.]

"The foregoing instrument was duly acknowledged on the 16th day of November, 1865, and recorded in the records of deeds of McLennan County, Texas, on the 22d day of September, 1866, in Book K, on pp. 777 and 778.

"16. Five notes dated Brazoria, 17th May, 1856, for $2942.83 each, executed by W. B. P. Gaines and R. J. Townes, payable to Ambrose Lanfear or order, in one, two, three, four, and five years after date respectively, drawing interest at the rate of 6 per cent per annum from the 6th day of March, 1855, till paid, the interest to be paid annually and payable to Commercial and Agricultural Bank of Galveston,—all of said notes being alike, except as to the time of payment. The following is a copy of one of the notes: $2942.83. Brazoria, 17th May, 1856. Two years after date, we jointly and severally promise to pay Ambrose Lan-

fear or order, two thousand nine hundred and forty-two & 63-100 dollars for value received, with interest at the rate of six per cent per annum from the 6th day of March, 1855, till paid, the interest to be paid annually, payable at Commercial and Agricultural Bank in Galveston. (Signed)   W. B. P. Gaines, R. J. Townes.'

"17.   Will of Robert J. Townes, as follows:

" 'I, Robert J. Townes, do make this my last will, revoking all others:

" 'First.   I appoint Everett T. Eggleston guardian of my children, during the longest time the law gives me authority to do so.

" 'Second.   I appoint Charles West, of Austin, executor of this my last will; he is not required to give bond or security, and the county court is restricted from having any control over the said executor or of my estate. He will take charge of the estate and manage it to the best advantage for the benefit of my creditors.

" 'Done at Edgmont, this 17th day of September one thousand eight hundred and sixty-five.   Said guardian is not to be required to give bond as security for the trust reposed in him.

(Signed)      " 'R. J. TOWNES.

" 'Witnesses:  J. D. Doxey, Thomas Adams.'

"It is agreed that the foregoing will was duly probated in the County Court of Travis County, Texas, on the 30th October, 1865, and that Charles West obtained letters testamentary and acted as independent executor of the estate of said Robert J. Townes.

"18.   Claim of John Henry Barnes against the estate of R. J. Townes, also allowance and transfer of same, as follows:

" 'I, John B. Jones, make oath and say that I am the agent of John Henry Barnes, who is the holder of the notes (four in number) hereto attached, signed by W. B. P. Gaines and R. J. Townes, dated Brazoria 17th May, 1856, payable respectively at two, three, four and five years from date, and each for the sum of two thousand, nine hundred and forty two dollars and eighty three cents ($2942.83) with six per cent per annum interest from March 6th, 1855 until paid, interest to be paid annually, and that there is due on said notes on this the 10th day of February, 1866, the sum of fifteen thousand eight hundred and ninety four dollars and forty cents ($15,894.40) that said notes are a just claim against the estate of said R. J. Townes and that all legal offsets, payments and credits known to me have been allowed on said notes, and that said notes were given by said Gaines and Townes for the purchase money of the following described lands, and are a lien on the same, viz: [Here follows a description of several tracts of land, including the land in controversy in this suit, and then the instrument proceeds as follows]:   The said lands being the same conveyed by me to said W. B. P. Gaines and R. J. Townes by deed dated on or about the 17th day of May, 1856, and recorded in the counties above named.

(Signed)      " 'JNO. B. JONES.

" 'Subscribed and sworn to before me at Galveston, this the 12th day of February, A. D. 1866. Witness my official seal.

[Seal]                          (Signed)          " 'H. M. TRUEHEART,
[Stamp]                          " 'Notary Public Galveston County, Texas.'

"The following indorsements appear in writing on the foregoing instrument: 'Feby. 23, 1866. The within claim allowed for the sum of $15,894.40, and the lien claimed acknowledged to exist. (Signed)   C. S. West, Executor.'

" 'For value received, I hereby assign and transfer to W. B. P. Gaines the within claim against the estate of R. J. Townes, but without recourse of any kind whatever on me. April 13—69. (Signed)   J. H. Barnes, by his Attys., Jno. B. and G. A. Jones.'

"To all of which, including affidavit, allowance of claim by West, and assignment of claim by Barnes (by his attorneys) the plaintiffs objected, because: 1. This testimony is immaterial. 2. It is hearsay, as to the heirs of Townes. 3. There is no connection shown between Barnes and Jones and Lanfear, and for this reason the testimony is irrelevant. 4. Barnes is nowhere shown to be the owner of the Lanfear notes. 5. The notes referred to in the affidavit are not identified as the Lanfear notes. 6. The admission of West, an independent executor, can not bind the heirs of Townes, or to title to real estate, but could only be taken against the estate so far as the debt is concerned.

Which objections were overruled and the plaintiffs did then and there except.

"19.   Receipt from John Barnes as follows: 'The State of Texas, Galveston County.—Galveston, 22nd July, 1871. I, John B. Jones, of the State and county aforesaid, certify and declare that all the notes given by R. J. Townes and W. B. P. Gaines for lands purchased by them at a sale of lands belonging to the estate of R. P. Jones made by Clinton Terry and C. C. Frankland, as assignee, at the city of Austin, about the 7th March, 1855, which notes were made payable to one Ambrose Lanfear, but given for the benefit of John Barnes and dated 7th March, 1855, and for the payment of which a lien was reserved on the lands purchased, have been paid and satisfied. (Signed)   Jno. B. Jones, attorney for John Barnes.'

"The foregoing receipt was duly acknowledged on the 22nd July, 1871.

"20.   Deed from Chas. S. West, independent executor of the last will and testament of Robert J. Townes, deceased, to Wm. B. P. Gaines, dated 31st May, 1872, conveying several tracts of land to the said Gaines, including the land in controversy. This deed recites a consideration of $5, and in this connection makes use of the following expression: 'There being an agreement between the said Robert J. Townes and William B. P. Gaines, that the title should vest in the survivor.'

"The foregoing deed was duly acknowledged on the 31st May, 1872, and recorded on the 6th December, 1880, in the records of deeds of McLennan County, Texas, in Book 34, pages 5, 6, and 7.

"This deed uses language to the effect that West, as executor, conveys all the right, title, and interest of the estate as effectually.as he could convey the same.

"21.  Deed dated 13th November, 1886, by W. B. P. Gaines to his son W. P. Gaines, conveying to him the land in controversy.  This deed recites a consideration of love and affection.  Said deed was duly acknowledged on the 18th November, 1886, and recorded on the 25 November, 1886, in the records of deeds of McLennan County, Texas, in Book 55, pages 609 and 610."

There are three grounds upon which we are disposed to affirm the judgment of the court below:

First.  It is reasonably certain from the evidence that the notes and indebtedness paid off by W. B. P. Gaines during his lifetime were the notes provided for in the contract entered into between Gaines and Townes on the 27th of August, 1856.  It is expressly provided in that contract that the legal title to the land described therein (which we find to be the land in controversy) was, upon the death of either party, to vest in the survivor, to sell and dispose of in order to pay off the notes stated in that agreement, which were the vendor's lien notes executed by Townes and Gaines in the purchase of the land in controversy.  This instrument is more than a naked power.  It is one coupled with an interest.  It confers upon the survivor the legal title in order to accomplish certain purposes mentioned in the contract,—that is, to satisfy an existing lien against the property.  Gaines had an equal interest with Townes up to the time of Townes' death.  The property then stood charged with the debt which Gaines subsequently paid off.  It was evidently the purpose of this instrument to keep alive the right of the survivor, recognizing his interest in the property, the power to protect himself by discharging the vendor's lien existing against the property.  The instrument can not be characterized as a power of attorney, that would terminate upon the death of Townes; but it is in the nature of a contract, conveying to Gaines, who happened to be the survivor of the two, the entire interest in the property, in order to execute the contract which he was direcly interested in.

Second.  We are of the opinion that Gaines acquired title under the deed executed by West, as independent executor of the estate of Townes. It is true that the will does not, in express terms, authorize the executor to sell, nor does it in express terms authorize the executor to pay debts due from the estate.  The facts in the record show that the estate of Townes was insolvent at the time of his death, and that the indebtedness against the land in question, by reason of the execution of the vendor's lien notes by Townes and Gaines, was paid off by Gaines.  The estate of Townes unquestionably was liable for one-half of this debt.  It was a charge upon the land in question, which Gaines, for his own protection, had the right to extinguish, and upon doing so the estate would become liable to him for its proportion of the amount paid.  West, as executor,

evidently regarded this as an existing liability against the estate, and executed the deed in question to Gaines in order to discharge that indebtedness. As said before, there is no express authority conferred by the will upon the executor to execute a deed, nor to sell for the purpose pose of paying debts; but we think the intention of the testator, as gathered from the terms of the will, was to confer the power upon West, as independent executor, to sell his estate for the benefit of his creditors.

We believe that in the absence of an express power authorizing sale, the correct rule is that if the will empowers the independent executor to pay debts, it implies the power to sell property for that purpose. Now the will, in terms, does not state that the executor shall pay the debts due from the estate; but it says that he shall take charge of the estate and manage it to the best advantage for the benefit of creditors. Now, we believe this language to be tantamount to an expression authorizing the executor to pay debts. It recognizes the existence of creditors and places the property in the hands of an independent executor, free from the control of the probate court. Now, the creditors could have pursued their legal remedy and obtained a judgment against the executor, West, and proceeded to have had sold for their benefit the assets of the estate. What they could have accomplished by forcing West by virtue of a judgment against him in the sale of the property for the satisfaction of debts, West could have voluntarily performed without being forced to do so by judgment.

Third. If the judgment can not be supported for either of the two reasons given, we think it can be sustained upon the proposition that the appellees are lienholders in possession. The plaintiffs' action was one of trespass to try title. They made no tender of the amount due the estate of Townes upon the vendor's lien notes on the land in question, which were paid off and discharged by Gaines. The appellees holding under Gaines would succeed to whatever rights he may have had, and the right conferred upon Gaines by reason of the discharge of these notes would be that of a lienholder. Gaines would require the lien of the vendor as to the amount due from the estate of Townes, and if Gaines was in possession, before the estate of Townes could be permitted to recover, it would be required to discharge the amount paid out by Gaines for its benefit.

There is no express evidence in the record showing that appellees are in possession of the land, but plaintiff's petition charges them with possession, and we take it as a fact established. Therefore, if either of the two reasons previously given can not be sustained, then the plaintiffs should not recover against the defendants in possession, because they can not be dispossessed while their valid lien exists, unless the plaintiffs discharge it.

It is contended by the appellants that Townes' interest in the property in controversy belonged to the community estate of himself and wife, and as she died first, her interest descended to these plaintiffs as her heirs, and that Townes thereafter had no power to dispose of it; and that

therefore they should recover their mother's community interest. It may be true that the will executed by Townes did not affect the community interest, in that he had no power after the death of his wife, by will, to convey her community interest. But if this be true, the judgment can clearly be sustained upon two of the grounds stated. Therefore, it is unnecessary to enter into a discussion as to what would be the rights of the plaintiffs if the appellees were only asserting a title under conveyance of West by virtue of the will of Townes.

We do not care to discuss other questions raised. For the reasons stated, the judgment is affirmed.

*Affirmed.*

Writ of error refused.